UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**UNITED STATES OF AMERICA**        )
                                    )
                                    )
        v.                          )      **Criminal No. 13-305-1 (ESH)**
                                    )
**JUAN R. FLOYD,**                  )
                                    )
                **Defendant.**      )
_____)

## MEMORANDUM OPINION AND ORDER

Defendant Juan R. Floyd, along with twenty-two others, has been charged with conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin, five hundred grams or more of cocaine, and twenty-eight grams or more of cocaine base, in violation of 21 U.S.C. § 846, crimes punishable by a minimum of ten years imprisonment. *See* 21 U.S.C. § 841. Floyd is also charged with conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h), for which the government seeks forfeiture pursuant to 21 U.S.C. §§ 853(a), (p) and 18 U.S.C. § 982.

The government requested a detention hearing which was held by Magistrate Judge Kay on November 26, 2013. (*See* Detention Memorandum ("Det. Mem.") at 1, Dec. 3, 2013 [ECF No. 64].) At the conclusion of the hearing, the Magistrate Judge ruled that Floyd should be held pending trial pursuant to 18 U.S.C. § 3142. (*See id.* at 7.) Floyd thereafter filed a motion to appeal Magistrate Judge Kay's detention order under 18 U.S.C. § 3145(b), which the government opposed. (Def. Floyd's Mot. for Review of Pretrial Det. Order ("Mot."), Dec. 11, 2013 [ECF No. 81]; Gov't's Omnibus Opp. to the Defs.' Mot. for Review and Revocation of Det. Orders ("Opp."), Dec. 13, 2013 [ECF No. 86].) This Court held a hearing on the motion on

December 17, 2013. For the reasons stated in open court, as well as the reasons set forth herein, the Court will deny this motion.

## DISCUSSION

Under the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, a judicial officer "shall order" a defendant's detention before trial if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e). The judicial officer considering the propriety of pretrial detention must consider four factors:

> (1) [t]he nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance, [or] firearm;
>
> (2) the weight of evidence against the person;
>
> (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; . . . and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.* § 3142(g). The government is required to demonstrate the appropriateness of pretrial detention by clear and convincing evidence. *See id.* § 3142(f). However, when "there is probable cause to believe that the [defendant] committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.)," there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." *Id.* § 3142(e). Considering each factor below, the Court agrees with the

Magistrate Judge that the government has met its burden and that defendant Floyd has failed to rebut the presumption against pretrial detention.

*First,* the nature and circumstances of the offense favor continued detention. The indictment demonstrates probable cause that Floyd participated in a large-scale narcotics and money-laundering conspiracy. Moreover, Magistrate Judge Kay concluded that Floyd was not just a member, but "appears to be the head of [this] significant narcotics enterprise . . . ." (Det. Mem. at 6.) Based on the government's proffer and the evidence presented at the December 17 hearing, the Court agrees with this conclusion.

Pursuant to warrant, the government recorded more than twenty thousand of Floyd's phone calls made on seven different cell phones during the period between April 2013 and August 2013.[1] (*See* Det. Mem. at 3; Gov't's Second Mem. in Support of Pretrial Det. ("Gov't's Mem."), Nov. 26, 2013 [ECF No. 15], at 7-8.) These calls strongly support the conclusion that Floyd played a central role in the alleged narcotics conspiracy. Significantly, he frequently spoke with Mr. Armando Gamez—a Texas-based narcotics supplier indicted in a related case. These conversations, conducted in code, concerned the purchase and transfer of large amounts of narcotics from Texas. (Det. Mem. at 3-4, 6.) There are also a significant number of calls (also in code) in which Floyd and his co-defendants discuss the purchase and sale of narcotics. (*Id.* at 6.)

In addition to the evidence derived from the wiretaps, Floyd was the subject of significant law enforcement surveillance. (Det. Mem. at 2; Opp. at 8.) This surveillance showed Floyd picking up couriers from Texas late at night from the Greyhound bus station, dropping them off at a hotel, and then driving to homes of family members (including his daughter and the mother of his daughter) where drugs were subsequently found. Floyd also deposited money in

---

[1] A total of fourteen cellphones were recovered from Floyd's home. Obviously, the government has no knowledge of the contents of the calls made on these additional phone lines not subject to wiretaps.

3

increments just below $10,000 into bank accounts corresponding to bank account numbers sent by text message from Gamez.[2] (Det. Mem. at 4.) Though no drugs were found when law enforcement searched Floyd's home, they recovered more than $470,000 cash and fourteen cell phones. This is an exceptional amount of cash and a large number of cell phones for an individual who, by his own admission, is unemployed and on SSI. (*Id.*) There were also drugs found in the homes and vehicles of Floyd's family members (who are also co-defendants and alleged co-conspirators), including his nineteen year-old daughter, Brittany Floyd's residence, his then-pregnant daughter, Juanita Culbreth's car, and the mother of his daughter, Mia Culbreth's D.C. home. There is also evidence that he used Juanita Culbreth's Nissan Maxima to transport narcotics and money, as well as to complete narcotics transactions. (Opp. at 8.) When law enforcement searched this vehicle they found five plastic bags containing a brown powder substance, a portion of which field tested positive for heroin. (Det Mem. at 4.) Ultimately, the nature and circumstances of the alleged offenses therefore strongly favor Floyd's continued detention.

*Second*, the weight of the evidence supports the inference that Floyd was the leader of this large-scale narcotics conspiracy. Floyd's attorney argues that the telephone intercepts which constitute a large part of the government's evidence against him have been "self-servingly interpreted by government agents as [a] suggestion [of] Mr. Floyd's involvement in the charged conspiracy. . . "[and b]elief does not amount to clear and convincing evidence." (Mot. at 2). The Court agrees instead with Magistrate Judge Kay's conclusion that "there is a wealth of evidence indicating drug trafficking on those calls." (Det. Mem. at 6.) For example, Floyd's conversations with Mr. Gamez about purchasing and transporting cars (specifically "Civics" and

---

[2] Under the Bank Secrecy Act of 1970, 31 U.S.C. § 5311, *et seq.*, financial institutions are required to file reports on deposits of more than $10,000 in order to help deter money laundering efforts. Regular deposits just under this statutory threshold indicate attempts to avoid government detection.

4

"Expeditions"), "African wood," and "fruits and vegetables" make no sense in light of the fact that Floyd is unemployed and there is no evidence that he ever came into possession of any such items. The far more likely explanation is that Floyd and Gamez were speaking in coded language regarding the purchase and transfer of specific narcotics.

The additional evidence against Floyd is significant: the large amount of cash and the cellphones found in his home, the heroin-laced substances found in Floyd's daughter's Nissan Maxima (which he was seen driving on many occasions), the regular deposits of amounts just below $10,000 into various bank accounts provided by Gamez, and regular trips to pick up individuals who were likely drug couriers. In addition, there is evidence that Floyd was texted the postal tracking number for a package mailed from Texas which was found to contain five pounds of a substance that field-tested positive for marijuana. (*See* Det. Mem. at 3.) Ultimately, the Court finds that the weight of evidence more than adequately implicates Floyd in this conspiracy.

*Third*, the history and characteristics of the defendant support his continued detention. Floyd has a considerable history of narcotics trafficking and is currently under court supervision for distribution of cocaine (set to expire in December 2014). (*See* Det. Mem. at 4.) Moreover, the evidence suggests that Floyd implicated his own children and other family members in the narcotics-conspiracy, including a nineteen-year old daughter. While the Court recognizes that Floyd has significant ties to the community as well as medical needs, these facts do not outweigh the factors that compel the Court to order his continued detention pending trial.

*Fourth*, defendant's potential danger to the community favors his continued detention. Floyd has been indicted as the leader of a large-scale narcotics conspiracy, which constitutes "serious and pervasive damage to the community." (Det. Mem. at 7.) Floyd's significant

contacts in both Washington D.C. and Texas, as well as his extensive history in the narcotics trade, represent a significant danger that he will continue to traffic narcotics if not detained pending trial.

For the foregoing reasons, defendant's motion for reversal of the Magistrate Judge's order of detention is hereby **DENIED**, and in accordance with 18 U.S.C. § 3142(i), the Court **ORDERS** that defendant remain in the custody of the Attorney General for confinement pending trial.

**SO ORDERED.**

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: December 18, 2013