UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUAN FLOYD<br><br>          Defendant. | Crim. Action No. 13-305 (EGS) |

**MEMORANDUM OPINION AND ORDER**

    Defendant Juan Floyd ("Mr. Floyd" or "Defendant") is currently serving two concurrent twenty-one-year sentences for crimes relating to conspiracy to distribute drugs and conspiracy to launder monetary instruments. *See* Judgment, ECF No. 1009 at 3.[1] As of April 14, 2022, Mr. Floyd had served approximately 40% of his sentence, having been incarcerated for over eight years. *See* Sentencing Monitoring Computation Data, ECF No. 1168-2 at 3. Mr. Floyd is incarcerated at United States Penitentiary, Hazelton in Bruceton Mills, West Virginia ("USP Hazelton"). *Id.* Pending before the Court is Mr. Floyd's *pro se* Motion for Compassionate Release under 18 U.S.C. § 3282(c)(1)(A), *see* Mot. for Compassionate Release ("Def.'s Mot."), ECF No. 1165; and (2) Mr. Floyd's Second Motion for Compassionate Release, *see* Mot.

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

1

for Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Def.'s Add'l Mot."), ECF No. 1173; and Mr. Floyd's Consent Supplement, see Consent Suppl. to Def.'s Mot. for Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Def.'s Suppl."), ECF No. 1179.

Upon careful consideration of the motion and opposition thereto, supplemental motion, opposition, and reply thereto, the applicable law, and the entire record herein, the pending compassionate release motions are **DENIED**.

## I. Background

In February 2013, the Federal Bureau of Investigation ("FBI") determined that Mr. Floyd was the leader of a large-scale narcotics and money laundering conspiracy. Proffer of Evidence, ECF No. 863 at 3. As part of the narcotics conspiracy, co-defendant Mr. Gamez, who resided in Texas, with the assistance of other co-conspirators, exported large quantities of heroin, cocaine, and some marijuana, from Texas to Mr. Floyd in the Washington, D.C., metropolitan area. *Id.* Mr. Floyd's daughter, Juanita Culbreth her mother, Mia Culbreth; and Mr. Floyd's other daughter Brittany Floyd, were also involved in defendant's criminal activities. *Id.* at 4. Mr. Floyd was arrested on November 20, 2013, and during a search of his apartment, law enforcement recovered $470,560 in United States currency, approximately fourteen cellular telephones, two computers, a gold ring with diamonds, and a gold necklace with

2

diamonds. *Id.* at 10. Mr. Floyd's Nissan Maxima also was searched and law enforcement recovered five clear plastic bags that contained 33.7 grams of heroin hydrochloride and 18.9 grams of cocaine base. *Id.* During a search of co-defendant Mia Culbreth's home, where Mr. Floyd kept some of his illegal narcotics and prepared his illegal narcotics for further distribution, law enforcement recovered a 9mm semi-automatic pistol loaded with ammunition that was left there by Mr. Floyd. *Id.* Mr. Floyd admitted responsibility for at least three kilograms but not more than ten kilograms of a mixture or substance containing a detectable amount of heroin, and at least 500 grams but less than two kilograms of cocaine. *Id*.

On November 6, 2015, Mr. Floyd pleaded guilty to one count of Conspiracy to Distribute One Kilogram or More of Heroin, 500 Grams or More of Cocaine and 28 Grams or More of Cocaine Base, in violation of Title 21, United States Code, §§ 841(a)(1), (b)(1)(A)(i) and (b)(1)(B)(ii), and 846; and one count of Conspiracy to Launder Monetary Instruments, in violation of Title 18, United States Code, § 1956(h). *See* Plea Agreement, ECF No. 862. On May 18, 2016, the Court sentenced him to 252 months' incarceration to be followed by 60 months' supervised release on count one, and 252 months' incarceration to be followed by 36

months' supervised release on count two, to run concurrently. *See* Judgment, ECF No. 1009.

On March 1, 2022, Mr. Floyd filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), claiming the following medical conditions make him vulnerable to COVID-19: repaired brain aneurysm, diabetes, obesity, asthma, high blood pressure, migraine headaches, arthritis in the knees. *See* Def.'s Mot., ECF No. 1165 at 1. He also suggests that he is entitled to early release in order to care for Mia Culbreth, one of his co-defendants and the mother of one of his daughters, who he says suffered a stroke that impairs her ability to care for herself. *Id.* He further argues that the conditions of his confinement constitute extraordinary and compelling reasons for his release. *Id.* at 2. Finally, he contends that the 18 U.S.C. § 3553(a) factors support release because he is rehabilitated. *Id*. The government filed its opposition on April 21, 2022. *See* Gov't's Opp'n, ECF No. 1168. Mr. Floyd, through his court appointed counsel, filed another motion for release on June 7, 2022. *See* Def.'s Add'l Mot., ECF No. 1176. He, also through counsel, filed a supplement on June 24, 2022. *See* Def.'s Suppl.

Mot., ECF No. 1179. The motions are ripe and ready for adjudication.

## II. Legal Standard

As a general rule, a federal court "may not modify a term of imprisonment once it has been imposed." *See* 18 U.S.C. § 3582(c). Since 1984, however, the Director of the Bureau of Prisons ("BOP") has been allowed to ask courts to reduce defendants' sentences in unusual circumstances pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, sec. 212 § 3582(c), 98 Stat. 1837, 1998-1999. Now, as the result of the First Step Act of 2018 ("First Step Act"), Pub. L. 115-391, § 603, 132 Stat. 5194, 5238-5240 (2018), the Court has the authority to modify a defendant's sentence upon a compassionate release motion brought by a defendant on his own behalf under 18 U.S.C. § 3582(c)(1)(A).

To be considered for a sentence modification under the First Step Act, the defendant first must have either fully exhausted all administrative rights to appeal the BOP's failure to bring a motion for release on his behalf or allowed a lapse of thirty days from the time the BOP received his request, whichever is earlier. *See* 18 U.S.C. § 3582(c)(1)(A). After receiving a properly filed motion, the Court must determine whether there are "extraordinary and compelling reasons [that]

5

warrant . . . a reduction," and then the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *Id.*[2]

## III. Analysis

### A. Mr. Floyd Has Exhausted his Administrative Remedies

Mr. Floyd submitted a request to the BOP on July 11, 2021 for a reduction in his sentence, and the Warden of USP Hazelton denied the request on October 5, 2021. Gov't's Opp'n, ECF No. 59 at 15. As more than thirty days elapsed before Mr. Floyd filed his compassionate release motion in this Court, the government agrees that Mr. Floyd has exhausted his administrative remedies. *See* Gov't's Opp'n, ECF No. 1168 at 14. Accordingly, the Court

---

[2] 18 U.S.C. § 3582(c)(1)(A) also provides that a court must consider whether a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's policy statement concerning compassionate release, U.S.S.G. § 1B1.13, was issued before Congress passed the First Step Act. It provides that a court may reduce the term of imprisonment upon motion by the Director of the BOP after considering the Section 3353(a) factors if: (1) the court finds extraordinary and compelling reasons warranting release; (2) the defendant is not a danger to the safety of any other person or to the community, and (3) a reduction is consistent with the policy statement. U.S.S.G. § 1B1.13. The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") recently confirmed that U.S.S.G. § 1B1.13 is not applicable to compassionate release motions filed by defendants. *See United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. May 18, 2021). Because the Sentencing Commission's preexisting policy statement concerning compassionate release predates the First Step Act, it speaks only to compassionate release motions filed by the Director of the BOP. *Id.*

finds that Mr. Floyd has met his exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A).

### B. Mr. Floyd Has Not Provided Sufficient Extraordinary And Compelling Health Reasons For Compassionate Release

The Court now turns to whether Mr. Floyd has established "extraordinary and compelling reasons" warranting the reduction of his sentence. *See United States v. Morris*, No. CR 12-154 (BAH), 2020 WL 2735651, at *2 (D.D.C. May 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

Mr. Floyd argues that extraordinary and compelling reasons warrant a reduction of his sentence to time served because his "diabetes, hypertension, obesity, and age (despite not being 65) place him at high risk of severe illness or death should he contract COVID-19." Def.'s Add'l Mot., ECF No. 1173 at 2. The government, for its part, argues that Mr. Floyd has not met his burden of establishing that extraordinary and compelling reasons exist to warrant compassionate release. *See* Gov't's Opp'n, ECF No. 1168 at 14. The government points out that the D.C. Circuit recently found that obesity is not a COVID-19 risk factor constituting an extraordinary and compelling reason justifying release. *Id.* at 16. The government adds that none of Mr. Floyd's other conditions are severe enough to meet the bar for release. *See id.* at 17. Having considered the parties' arguments, the record, and the relevant case law, the Court is unpersuaded that

7

Mr. Floyd suffers from medical conditions that constitute extraordinary and compelling reasons for a sentence reduction.

Mr. Floyd had a BMI of 34.9 on March 29, 2022. *See* Exhibit 3 (BOP 2022 Medical Records), ECF No. 1168-3 at 15.  As the government concedes, obesity is among the CDC's list of underlying medical conditions associated with a higher risk for severe illness or death from COVID-19. *See* CDC, *Medical Conditions* (Feb. 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical- conditions.html (last visited Apr. 19, 2022). However, the D.C. Circuit recently found that obesity is not a COVID-19 risk factor constituting an extraordinary and compelling reason justifying release. *See United States v. Jackson*, 26 F.4th 994, 1002 (D.C. Cir. 2022). Moreover, overwhelming authority recognizes that even prisoners with medical conditions that would otherwise place them at heightened risk from COVID-19 obtain a great reduction in that risk once vaccinated. *See United States v. Morales*, No. CR 06-248-4 (JDB), WL 4622461, at *6 (D.D.C. Oct. 7, 2021) ("Th[e vaccine's] substantial protection against COVID—and especially against life-threatening courses of the disease—seriously undermines Mr. Morales's purported 'extraordinary and compelling' reason for release.")). Mr. Floyd has received both doses of the Pfizer-BioNTech COVID-19 vaccine. Gov't's Opp'n,

8

ECF No. 1168 at 1. Multiple judges in this District "have now recognized that 'the remarkable effectiveness of these vaccines raises an extremely high bar to establishing extraordinary and compelling reasons for a sentence reduction based on the risk of contracting COVID-19.'" *United States v. Sumler*, No. 95-154-2 (BAH) 2021 WL 6134594, at *26 (D.D.C. Dec. 28, 2021) (quoting *United States v. Clark*, No. 10-0133 (PLF), 2021 WL 5630795, at *4 (D.D.C. Dec. 1, 2021) (collecting cases)). Judges in this district have also uniformly concluded that defendants generally cannot establish extraordinary and compelling reasons for compassionate release if they have received even a single dose of the vaccine. *See United States v. Martinez*, No. 1:05-cr-445-1 (RCL), 2021 WL 2322456, at *2 (D.D.C. June 7, 2021) (denying compassionate release because, although defendant may have underlying medical conditions that could increase his risk of severe illness from COVID-19, "the fact that he has been fully vaccinated mitigates that risk almost entirely"); *United States v. Hicks*, No. 93-97-2 (BAH), 2021 WL 1634692, at *6 (D.D.C. Apr. 27, 2021) ("That defendant will soon complete both doses of this highly effective vaccine undercuts his claim that he must be released to reduce his risk of infection with COVID-19."); *United States v. Shepard*, No. 07-85 (RDM), 2021 WL 848720, at *6 (D.D.C. Mar. 4, 2021) ("Given that Shepard received his first dose of the vaccine about two weeks ago . . . he cannot show

9

that he needs to be released from prison to protect him from risks associated with COVID-19."). Given the D.C. Circuit's ruling as to obesity, coupled with the reduced risk Mr. Floyd faces after having been fully vaccinated, the Court cannot determine his obesity to be an extraordinary and compelling reason for a sentence reduction.

Nor do Mr. Floyd's diabetes, asthma, or hypertension provide a basis for relief. As the government points out, although the BOP medical records show that Mr. Floyd has asthma, it is not "moderate to severe" asthma as identified on the CDC list of medical risk factors. *See* CDC, *Medical Conditions* (May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people- with-medical-conditions.html (last visited July 21, 2022). Mr. Floyd's asthma is instead described as, "intermittent: stable, rarely uses inhaler," and he has been prescribed an Albuterol inhaler only for use as-needed rather than daily. *See* Government Exhibit 3, BOP 2022 Medical Records, ECF No. 1168-3 at 15, 23. Mr. Floyd has been prescribed medication for both his hypertension and diabetes, *see id.* at 5, 28; and other than alleging he suffers from these conditions, he does not make a case for why these conditions are extraordinary enough to warrant release. As with obesity, even if Mr. Floyd had established extraordinary and compelling conditions, the

fact that he is vaccinated would sufficiently lower his risk. *See Martinez*, 2021 WL 2322456, at *2.[3]

The Court is cognizant that individuals who have been vaccinated remain at some risk of infection and/or reinfection. *See United States v. Manglona*, 3:14-cr-05393-RJB, ECF No. 205 at *3 (W.D. Wash. Mar. 3, 2021) (concluding that vaccination against COVID-19 during the pendency of a motion for compassionate release "should not, and does not, in some way trump the Court's consideration of the motion," noting that "[r]isk appears to remain, but it is reduced to an unknown degree"). The Court also recognizes the risks new variants of the virus may pose even to people who are vaccinated. *See United States v. White*, No. 3:17-CR-00104-2, 2021 WL 268719, at *4 (M.D. Tenn. Jan. 27, 2021) (citing CDC, https://www.cdc.gov/coronavirus/2019-ncov/more/science-and-research/scientific-brief-emergin g-variants.html (no longer available)) (observing that "variants to the SARS-CoV-2 strain were identified that may (or may not) allow the virus to spread

---

[3] Mr. Floyd also asserts he has edema present on his bilateral lower legs, a repaired brain aneurysm, and migraines, *see* Def.'s Add'l Mot., ECF No. 1173 at 5-6; but these are not conditions that are recognized as increasing one's risk of severe illness or death due to COVID-19 and are therefore not considered in the Court's analysis, *see* CDC, *Medical Conditions* (May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people- with-medical-conditions.html (last visited July 21, 2022).

11

more quickly, lead to 'more severe or less severe illness,' and 'evade vaccine-induced immunity'"). However, the question is not whether Mr. Floyd faces *any* risk, but whether 'extraordinary and compelling reasons' warrant the reduction of his sentence." The benefits of the vaccine, even for people with health conditions such as Mr. Floyd has, are substantial and far reaching. The CDC notes that COVID-19 vaccines are "safe," "effective," and "keep you from getting seriously ill even if you do get COVID-19." *See Benefits of Getting a COVID-19 Vaccine*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last visited July 21, 2022). The vaccine "diminish[es] the risk of serious complications from COVID-19 and thus substantially mitigate[s] any increased risk defendant has or claims to have based on potential exposure to COVID-19." *Sumler*, 2021 WL 6134594, at *25 (quotation omitted). Accordingly, Mr. Floyd's health conditions do not present a reason for compassionate release.

### C. Mr. Floyd Has Not Provided Sufficient Extraordinary And Compelling Personal Reasons For Compassionate Release

Mr. Floyd also argues for compassionate release on the basis that he seeks to care for Mia Culbreth, one of his co-defendants and the mother of one of his daughters, who suffered a stroke that impairs her ability to care for herself. *See* Def.'s Add'l Mot., ECF No. 1173 at 2. The government disputes

Mr. Floyd's expansive interpretation of the compassionate release statute. *See* Gov't's Opp'n, ECF No. 1168 at 5. Assuming that Mia Culbreth is Mr. Floyd's registered partner, the Court concludes that Mr. Floyd has not demonstrated that he is the only available caregiver for her.

Although the compassionate release statute does not define the term "extraordinary and compelling" reasons, persuasive authority holds that while U.S.S.G. § 1B1.13 is not binding it continues to provide important "guideposts." *See United States v. McGee*, 992 F.3d 1035, 1045 (10th Cir. 2021). Relevant here, the Commentary to U.S.S.G. § 1B1.13 states in part that extraordinary and compelling reasons for early release might include "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse." Application Notes, U.S.S.G. § 1B1.13 (1)(C). The Commentary also allows for compassionate release if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13(1)(D).

Mr. Floyd now alleges that Ms. Culbreth is his registered partner, although this was not a claim he made previously or provides any documentation to support. *See* Def.'s Suppl. to Mot., ECF No. 1179 at 3. Their daughter, Juanita Culbreth,

13

states that she is unable to care for her mother, suffers from depression after the murder of her 16-year-old son, and there is no one else available to help. *See* ECF No. 1179-1 at 1. Mia Culbreth's lawyer has also informed the Court that she had a stroke on November 14, 2021 and remains "currently unresponsive." *See* ECF No. 1176. According to the November 15, 2022 status report filed in Mia Culbreth's case, U.S. Pretrial Services Office verified that she is currently in the Critical Care Unit of the Ft. Washington Health and Rehabilitation Center. Case No. 13-cr-305-23, ECF No. 1183. Juanita Culbreth advised Pretrial Services that "[Mia] Culbreth is not oriented to time and place." *Id*. The record therefore demonstrates that Mia Culbreth is receiving care at the Ft. Washington Health and Rehabilitation Center.

Since Mr. Floyd has not established "extraordinary and compelling reasons" that would warrant his release, the Court need not evaluate, pursuant to 18 U.S.C. § 3582, whether he would be a danger to the community if released, nor the 18 U.S.C. § 3553(a) sentencing factors. *See* U.S.S.G. 1B1.13(2).

**IV. Conclusion and Order**

For the reasons stated above, the Court hereby

**DENIES** Mr. Floyd's *pro se* Motion for Compassionate Release under 18 U.S.C. § 3282(c)(1)(A), ECF No. 1165; and Mr. Floyd's Additional Motion for Compassionate Release, ECF No. 1173.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan
            United States District Judge
            November 28, 2022**